IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO, EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>LG Model # LG-500 (black); S/N: 310CYTB269841; FCC ID: ZNFD500; IMEI:013658-00-269841-3<br><br>CURRENTLY LOCATED AT<br><br>801 WEST SUPERIOR AVENUE, CLEVELAND, OHIO 44113 | Case No.: **1:16 MJ 3305** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Chris Damschen, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Border Patrol Agent with the U.S. Department of Homeland Security, United States Customs and Border Protection, United States Border Patrol, and have been so

assigned since February 06, 2006. Your affiant has been trained in the laws of search and seizure at the Border Patrol Academy in Artesia, New Mexico. Moreover, I have utilized my training on many instances in my career as a Border Patrol Agent as well as my current assignment as a member of the Northern Ohio Law Enforcement Task Force (NOLETF). The affiant has experience investigating violations of the Immigration Laws of the United States as well as State and Federal narcotics statutes. Furthermore, affiant has arrested several hundreds of individuals for violations of the Federal Immigration Laws of the United States and State and Federal narcotics statutes. Affiant has attended and graduated from the U.S. Border Patrol Academy in July, 2006 in Artesia, New Mexico.

3.  The facts in this affidavit come from your affiant's personal observations, training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4.  The items to be searched are:

    a. LG CELL PHONE (Black); Model: LG-500; IMEI: 013658-00-269841-3; S/N: 310CYTB269841; FCC ID: ZNFD500

5.  Collectively, this cellphone is hereinafter referred to as the "Device."

6.  The Device is currently located at the Northern Ohio Law Enforcement Task Force, 801 West Superior Avenue, Cleveland, Ohio 44113.

7.    The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

8.    On December 01, 2016, Border Patrol Agent Chris Damschen conducted a second Proffer of Erwin MAZARIEGOS at the U.S. Federal Courthouse in Cleveland, Ohio. In an attempt to cooperate with the U.S. Attorney's Office, MAZARIEGOS voluntarily agreed to a full search of his telephone to corroborate information that he supplied to investigators. MAZARIEGOS claims that his telephone will verify the contact information of potential subjects of interest to law enforcement as well as the tracking information of drug shipments that he initiated. This information is expected to include international drug smuggling participants and a possible vendor of fraudulent documents.

9.    In my training and experience, smugglers of illicit contraband and fraudulent document venders commonly utilize cellular telephones as a means of communication between themselves and their criminal organization hierarchy in the furtherance of the crimes they are committing. Fraudulent document venders commonly utilize cellular telephones and electronic devices to make phone calls to illegal aliens and other criminal contacts to arrange meetings and further their illicit activities. These devices are not only used for communication but also hold other electronic information. Specifically, electronic devices are capable of storing incoming/outgoing telephone numbers, contact numbers, text messages, photos, information and data that is relevant and could contain fruits of the crime and assist in other ongoing federal investigations.

3

10. Cellular providers are able to capture, store, send and receive text or multimedia messages (photos, audio, or video) from one subscriber's cellular device to other subscriber's cellular device via one or more cellular providers. This service is often referred to as "Short Message Service" ("SMS") or "Multimedia Messaging Service" ("MMS"), and is often referred to generically as "text messaging" or "wireless messaging." Based on my knowledge and experience, I believe that stored electronic communications, including SMS and MMS messages that have been sent or received by subscribers, may be stored on the identified cellular device that will assist in the furtherance of the ongoing federal investigation.

11. The Device is currently located at the U.S. Federal Courthouse, 801 West Superior Avenue, Cleveland, Ohio 44113. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, are substantially the same state as they were when the Device first came into the possession of the federal investigators.

## TECHNICAL TERMS

12. Based on my training and experience, I use the following technical terms to convey the following meanings:

   a. Wireless telephone: A cellular device (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These cellular devices send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A cellular device usually contains a "call log,"

4

which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet to include communication transmissions in the form of social media and other messaging applications including but not limited to Facebook and WhatsApp. Cellular devices may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod or iPad) is a handheld digital storage device designed primarily to store and play

5

audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. Cellular device internal GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

13. Based on my experience and research, cellular devices have capabilities which allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs. Examination of these cellular devices may reveal possible evidence of past or present criminal activity. Moreover, it could reveal the hierarchy and personalities associated within a criminal organization.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

14. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

15. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

9

16. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

17. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

18. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Chris Damschen
Border Patrol Agent
United States Border Patrol

Subscribed and sworn to before me
on December 8, 2016:

THOMAS M. PARKER
UNITED STATES MAGISTRATE JUDGE